**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILTON REASSURANCE LIFE COMPANY OF NEW YORK<br><br>*Plaintiff,*<br><br>v.<br><br>CHERYL ENGELHARDT[1]; LYDIA ENGELHARDT; AND MARK ENGLEHARDT,<br><br>*Defendants.* | Civil Action No. 21-09968<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

In this statutory interpleader case, Plaintiff Wilton Reassurance Life Company of New York's has filed a motion to deposit funds and to be dismissed from the proceeding pursuant to 28 U.S.C. § 1335 and Federal Rules of Civil Procedure 22 and 67. D.E. 10. Defendants Cheryl and Lydia Engelhardt (collectively "Defendants"), putative claimants, oppose the motion. D.E. 16. The Court has considered the motion and all other relevant filings,[2] and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Plaintiff's motion is **GRANTED**.

---

[1] Plaintiff spells Defendants' last name as "Engelhardt," while Defendants Cheryl and Lydia spell it as "Englehardt." The Court uses the spelling in the Complaint unless quoting from Defendants' submissions.

[2] Plaintiff's motion, D.E. 10; Defendants' opposition, D.E. 16; Plaintiff's reply, D.E. 17; Defendants' Answer with Crossclaim and Counterclaims, D.E. 15; and Plaintiff's Answer to Defendants' Counterclaims, D.E. 18. Defendant Mark Engelhardt has not appeared in the matter.

### I. BACKGROUND

Plaintiff's predecessor-in-interest issued life insurance policy no. LN00462680 (the "Policy") on April 5, 1988, to Ralph Engelhardt (the "Decedent"). D.E. 1 ("Compl.") ¶ 7.[3] The Policy provided a death benefit of $100,000. *Id.* ¶ 8. The Policy designates Defendant Cheryl Engelhardt as the primary beneficiary and lists her as the Decedent's wife. D.E. 1-1 at 21. The Policy designates Mark Engelhardt as the contingent beneficiary and lists him as the Decedent's brother. *Id.*

The Decedent and Cheryl had two children: Jenna, a non-party, born in 1993; and Defendant Lydia, born in 1999. D.E. 1-3 at 2. The Decedent and Cheryl divorced in 2016. *See* Compl. ¶ 11; D.E. 1-3 ("PSA").[4] Section 13.1 of the PSA provides as follows:

> Each party shall maintain a life insurance policy with a minimum face amount of $100,000.00 for the benefit of their daughter, Lydia, and shall designate the other as Trustee of said policy, until Lydia is emancipated. The parties shall each furnish a copy of his/her life insurance policy to the other by June 30, 2016 and proof that such policy remains in effect by June 30th of each year thereafter. Neither party shall cancel or make any modifications to his/her policy without the written consent of the other party or a Court Order until Lydia is emancipated.

*Id.* at 21. The PSA also indicates that various events will result in Lydia being deemed emancipated. *Id.* at 12-13.

---

[3] A copy of the Policy is attached to the Complaint as Exhibit A. D.E. 1-1.

[4] D.E. 1-3 is a redacted version of the Decedent and Cheryl's June 23, 2016 Property Settlement and Support Agreement ("PSA"). The PSA is Exhibit C to the Complaint.

The Decedent died on December 11, 2019. Compl. ¶ 9. Defendants indicate that as of that date, Lydia was not "emancipated" within the meaning of the PSA. D.E. 15 at 6-7 ¶ 17.[5] On June 11, 2020, Cheryl submitted a "Claimant's Statement" to Plaintiff.[6] The statement describes the Decedent's marital status as "Other" as opposed to "Married" or "Divorced" and her "Relationship to Insured" as "Ex-wife." D.E. 1-2 at 2. The form asks, "In what capacity are you claiming the death benefit? **Please check the box that applies to you.**" *Id.* (bold in original). The options are "Named Beneficiary," "Executor/Administrator," "Legal Guardian," "Trustee," and "Other." *Id.* Cheryl checked "Named Beneficiary." *Id.* Cheryl also submitted a copy of the PSA, which Plaintiff interprets as "provid[ing] that the Policy shall be maintained for the benefit of Defendant Lydia Engelhardt until she is emancipated." Compl. ¶ 11.

On October 12, 2020, Mark submitted his own Claimant's Statement.[7] *Id.* ¶ 12. Mark too described the Decedent's marital status as "Other" and also claimed the Policy benefit as "Named Beneficiary." D.E. 1-4 at 2.

On November 24, 2020, in response to correspondence from Plaintiff, Cheryl sent a letter to Plaintiff. Compl. ¶ 13.[8] Cheryl explained that the Decedent was her "late ex-husband" and that he "maintained his insurance with you [sic] company[.]" D.E. 1-5 at 2. She clarified that the PSA "states the [sic] he & I maintain separate life insurance policies in the amount of $100,000.00 for the benefit of our daughter Lydia and that we designate each other as Trustee of said policies." *Id.*

---

[5] The Answer is set forth in a list of numbered paragraphs, which restarts at the beginning of the crossclaim section. For clarity, when citing to the Answer, the Court provides both the page and paragraph numbers.

[6] Cheryl's Statement is Exhibit B to the Complaint.

[7] Mark's Statement is Exhibit D to the Complaint.

[8] Cheryl's letter is Exhibit E to the Complaint.

Plaintiff filed its Complaint on April 21, 2021 followed by the instant motion. D.E. 1; D.E. 10. On October 12, 2021, Defendants filed their Answer to the Complaint and opposition to Plaintiff's motion. D.E. 15; D.E. 16. In their Answer, Defendants maintain that Cheryl is the Policy's primary beneficiary. D.E. 15 at 2 ¶ 8. Defendants therefore "deny that there are adverse interests in the Policy Proceeds as the designated beneficiary form was clear on its face[.]" *Id.* at 3 ¶ 18. *See also id.* at 4.

Defendants also bring two counterclaims. First, they allege that "Plaintiff's failure to make payment to Defendant, Cheryl Englehardt, is wrongful, unlawful, and a breach of its insurance contract." *Id.* at 7 ¶ 26. Second, they allege that the failure to pay Cheryl the Policy proceeds is "an unconscionable commercial practice" that violates the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq*. *Id.* at 8 ¶ 36.

Cheryl and Lydia also bring a crossclaim against Mark, asserting that Cheryl "was entitled to receive all of the Policy Proceeds[,]" and that Mark "was a contingent beneficiary under the Policy, and entitled to receive none of the Policy Proceeds as the Primary Beneficiary of the Policy is Defendant, Cheryl Englehardt." *Id.* at 11 ¶¶ 13-14. Defendants describe Mark's claim submission as wrongful. *Id.* at 12 ¶ 18. They continue that he "has no interest in the Policy or the Policy Proceeds, yet has failed to relinquish his wrongful claim to the same." *Id.* at 12 ¶ 27.

## II.    STANDARD OF REVIEW

Plaintiff invokes the federal interpleader statute, 28 U.S.C. § 1335, as opposed to Federal Rule of Civil Procedure 22 interpleader. Section 1335 grants a federal district court original jurisdiction over an interpleader action when there is diversity between two or more adverse claimants, as defined by 28 U.S.C. § 1332(a) or (d), and the amount in controversy is $500 or more. 28 U.S.C. § 1335. It also requires the plaintiff to deposit the funds at issue into the court's

registry. *Id.*[9] If these requirements are satisfied, a court has subject matter jurisdiction over the action.

"The equitable remedy of interpleader allows 'a person holding property to join in a single suit two or more persons asserting claims to that property.'" *Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 275 (3d Cir. 2007) (quoting *NYLife Distrib., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 372 n.1 (3d Cir. 1995)). Interpleader allows the party holding the property at issue "to file suit, deposit the property with the court, withdraw from the proceedings[,]" and then permits the parties with the competing claims to litigate the underlying dispute. *Price*, 501 F.3d at 275. As a result, an interpleader action usually proceeds in two stages. At the first stage, "the court determines whether the interpleader complaint was properly brought and whether to discharge the stakeholder from further liability to the claimants." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 262 (3d Cir. 2009). At the second stage, the court determines the respective rights of the claimants to the interpleaded funds. *Id.* Ultimately, interpleader "relieves the [plaintiff] from determining at his peril the merits of the competing claims and shields him from the prospect of multiple liability; [and] gives the claimant who ultimately prevails ready access to the disputed fund." *NYLife Distrib., Inc.*, 72 F.3d at 374.

---

[9] "In contrast to Section 1335, the District of New Jersey's Local Civil Rules explicitly prevent such deposits without a court order." *Prudential Ins. Co. of Am. v. Ianetti*, No. 19-21849, 2021 WL 71593, at *3 n.5 (D.N.J. Jan. 7, 2021) (internal quotation marks and citation omitted). *See also* L. Civ. R. 67.1(a)(1)(A); *U.S. Life Ins. Co. in City of N.Y. v. Holtzman*, 723 F. App'x 141, 145 (3d Cir. 2018).

### III. ANALYSIS

Plaintiff says that it holds the Policy proceeds (with interest) and that it received claims from Cheryl and Mark. D.E. 10 ¶¶ 1, 3. Plaintiff disavows any interest in the money and asks the Court to grant it permission to deposit the proceeds and then to dismiss Plaintiff, leaving Defendants to determine whom should receive the proceeds. *Id.* ¶¶ 5-7. Defendants' primary response is that their affirmative claims preclude dismissing Plaintiff. D.E. 16 ¶ 14. They add that efficiency would be better served by having Plaintiff retain the Policy benefits until the case is resolved. *Id.* ¶ 15.

The Third Circuit's decision in *Hovis* is apposite. In 2003, Robert L. Hovis, a representative of Prudential, sold to Bonnie Shall a life insurance policy with $100,000 in benefits. 553 F.3d at 259. David Potter, Shall's son, was the primary beneficiary, and Denise Gerski, Shall's daughter, was the contingent beneficiary. *Id.* Hovis and Shall later struck up a relationship and cohabitated. *Id.* In 2005, Shall's cancer returned, and her prognosis was bleak. *Id.* at 259-60. In late January 2006, Shall, through Hovis, submitted request to Prudential to change the owner of her life insurance policy to Hovis and to name him the policy's primary beneficiary. *Id.* at 260. Shall died on February 23, 2006. *Id.*

Prudential had not effected the changes at the time of Shall's death because their internal policy did not permit their salespeople to be the owners or beneficiaries of clients' policies, with an exception for immediate family. *Id.* Although Hovis listed himself as Shall's fiancé on the change-request form, he had not sought his supervisor's approval before doing so as he was required, so Prudential instituted a review to determine whether to grant Hovis' request. *Id.* Although the review started before Shall died, Prudential did not speak with her. *Id.* After Hovis provided documents to substantiate his relationship with Shall, Hovis' managing director, in early

6

March 2006, recommended that Hovis be treated as the policy's beneficiary but not its owner. *Id.* Later that month, Prudential began another investigation into the matter, which involved a handwriting analysis of Shall's signature on the change-request. *Id.* Although Shall signed the request form in a former Prudential agent's presence, the analysis could not verify the authenticity of her signature due to her physical condition at the time. *Id.* The investigation further called into question the accuracy of the other documents that Hovis had submitted. *Id.* While the investigation was in its final stages, Potter spoke with Prudential and was informed of Hovis' dealings. *Id.* In June 2006, Potter asked Prudential to resolve his mother's policy's status and accused Hovis of fraud. *Id.* at 261.

In July, Prudential instituted an interpleader action and asked to be dismissed from the proceedings. *Id.* Hovis, in addition to claiming the funds, argued that Prudential could not seek interpleader relief because Prudential did not have a valid reason for not paying him the policy proceeds. *Id.* He also brought counterclaims under Pennsylvania statutory and common law, predicated on "Prudential's alleged failure to process Shall's request to change the ownership and beneficiary of her policy in a timely manner." *Id.*

After setting forth the applicable two-part framework, the Third Circuit recited the "general rule that a party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit . . ., he cannot have relief by interpleader." *Id.* at 263 (alteration in original) (quoting *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988)). The Third Circuit had difficulty in seeing how Prudential was "in any way to 'blame [for] causing the controversy.'" *Hovis*, 553 F.3d at 263 (alteration in original) (quoting *Farmers Irrigating Ditch*, 845 F.2d at 232). Interpreting Hovis's argument on this point as essentially a complaint about the pace of Prudential's

investigation, the Third Circuit explained that it was it was "the unmistakable appearance of impropriety surrounding [Hovis's] request[]" that caused the delay and the succeeding controversy over who was entitled the policy's payout. *Hovis*, 553 F.3d at 263. The court in *Hovis* reasoned that even if Prudential had proceeded faster, there was every indication it would have been sued by Potter and Gerski for the funds. *Id.*

The *Hovis* court also explained that the equitable principles Hovis had invoked as to whether the stakeholder had clean hands or was attempting to unfairly avoid liability were not implicated. *Id.* at 263 n.4. The Circuit clarified that those principles are implicated when "the stakeholder's own errors are responsible for the ownership dispute[,]" and serve "to prevent a tortfeasor, facing claims from multiple parties, from using the interpleader device to cap its liability." *Id.* *See also, e.g.*, *Lee v. W. Coast Life Ins. Co.*, 688 F.3d 1004, 1006 (9th Cir. 2012) (denying interpleader where negligent stakeholder was exposed to liability by its inadvertent creation of a conflict as to multiple potential claimants' entitlement to the funds).

After concluding that the interpleader was appropriately brought, the Third Circuit turned to Hovis's argument that the district court should not have dismissed his counterclaims because "those counterclaims are not claims *to* the interpleaded funds and thus fall outside the scope of Prudential's interpleader action." *Id.* at 264 (emphasis in original). The Third Circuit explained that under modern interpleader practice, "where a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court." *Id.* The Circuit, however, observed that Hovis' claims were premised on Prudential's alleged failure to conclude the investigation in a manner favorable to him and to pay him the life insurance policy's benefits. *Id.* The *Hovis* court continued that "[a]s such, none of the counterclaims is truly independent of

8

who was entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle." *Id.* at 264-65. Adopting Hovis' position, the court reasoned, would undercut the purpose of interpleader—"that a 'stakeholder [should] not [be] obliged at his peril to determine which claimant has the better claim.'" *Id.* at 265 (alterations in original) (quoting *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957)). The court in *Hovis* determined that the stakeholder's declination to choose which claimant has the best claim, then, "cannot itself be a breach of a legal duty." *Hovis*, 553 F.3d at 265. While the Third Circuit recognized exceptions to its holding, it found none of them applicable and concluded that Prudential was protected by the interpleader device "from further liability to the claimants for the amount owed under the life insurance policy, [and] also from liability arising out of its decision to settle the ownership controversy by way of interpleader." *Id.* at 265-66.

The Court finds that the interpleader action was appropriately brought. Defendants assert that Plaintiff engaged in undue delay. And *Hovis* did recognize that unreasonable delay can be grounds for precluding a stakeholder from bringing an interpleader action. *Id.* at 265 n.5. Here, however, Cheryl submitted two facially conflicting documents. While her Claimant's Statement averred that she was the named primary beneficiary of the Decedent's policy, the PSA suggested that she was a trustee and that Lydia was, in fact the primary beneficiary. The Court can reasonably infer from Cheryl's letter of November 2020 that Plaintiff was reviewing Cheryl's conflicting representations as to her status. *See* D.E. 1-5 at 2.

New Jersey law creates further uncertainty as to Cheryl's entitlement to the Policy proceeds. She and the Decedent divorced in 2016. *See* D.E. 1-3 at 2. However, on Cheryl's Claimant's Statement, she indicated that the Decedent's marital status as "other" rather than "divorced." She then indicated that she was the Decedent's "ex-wife." Plaintiff asserts that N.J.

9

Stat. Ann. § 3B:3-14 may therefore apply. D.E. 17 at 3. That statute provides in relevant part that "a divorce or annulment[] revokes any revocable[] dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument[.]" N.J. Stat. Ann. § 3B:3-14(a)(1)(a). The statute also provides that "[i]n the event of a divorce or annulment, provisions of a governing instrument are given effect as if the former spouse and relatives of the former spouse disclaimed all provisions revoked by this section[.]" *Id.* § 3B:3-14(a)(2). The New Jersey Appellate Division has explained that New Jersey's "Legislature . . . acted in [§] 3B:3-14 to provide that divorce automatically revokes a disposition of property made by a divorced individual to his former spouse in a governing instrument which, by definition, includes an insurance policy." *Fox v. Lincoln Fin. Grp.*, 109 A.3d 221, 227 (N.J. Super. Ct. App. Div. 2015). *See also Guardian Life Ins. Co. of Am. v. Gonnella*, 806 F. App'x 79, 82 (3d Cir. 2020) ("[T]he auto-revocation statute severed [ex-husband's] interest as primary beneficiary of the policy."). Assuming without deciding that the New Jersey auto-revocation statute applies, it is at best unclear whether Cheryl remained the policy's primary beneficiary.[10]

Plaintiff also relies on *Stonebridge Life Insurance Co. v. Kissinger* 89 F. Supp. 3d 622 (D.N.J. 2015). D.E. 17 at 1-2. In that case, the decedent's ex-wife and his daughter filed claims with the decedent's life insurer, seeking his policy's proceeds. 89 F. Supp. 3d at 624. The plaintiff initiated a statutory interpleader. *Id.* at 625-26. The decedent's ex-wife argued that the plaintiff should have paid her and not brought an interpleader, contending that the auto-revocation statute was no barrier because N.J. Stat. Ann. § 3B:3-14(d) absolved the plaintiff of liability, she was the executor of the decedent's estate, and she was a creditor of estate. *Id.* at 626-27. The *Kissinger*

---

[10] The court in *Gonnella* recognized that there is an exception to the New Jersey statute. 806 F. App'x at 82 (quoting N.J. Stat. Ann. § 3B:3-14(a)). Defendants have not argued the exception, so the Court declines to address it *sua sponte*.

10

court found that the plaintiff appropriately brought the action because of the dispute between the ex-wife and the daughter over the funds. *Id.* at 626. The court in *Kissinger* highlighted the ex-wife's inconsistent positions and permitted the interpleader. *Id.* at 626-27.

Here, at the time that Plaintiff filed the suit, Cheryl and Mark had submitted rival claims to the Policy proceeds, and, like the ex-wife in *Kissinger*, Cheryl took "inconsistent positions concerning her rights . . . to the insurance proceeds." *Id.* at 626. And Defendants do not dispute that Mark was clearly named the contingent beneficiary on the Policy.

Accordingly, the Court finds that Plaintiff has properly invoked the interpleader statute.

As noted, counterclaims by claimants against a stakeholder can militate against dismissing stakeholders from a case. *E.g.*, *Metro. Life Ins. Co. v. Teixeira ex rel. Sarto*, No. 16-07486, 2017 WL 3951597, at *1 (D.N.J. Sept. 8, 2017). However, as *Hovis* made clear, not all counterclaims qualify. *Hovis* ruled that the statute's protections are effective against counterclaims "where the stakeholder bears no blame for the existence of the ownership controversy and *the counterclaims are directly related to the stakeholder's failure to resolve the underlying dispute in favor of one of the claimants.*" 553 F.3d at 259 (emphasis added). Here, both of Defendants' counterclaims are directly related to Plaintiff's failure to resolve the underlying dispute in Cheryl or Mark's favor. The breach of contract is premised upon Plaintiff's alleged failure to pay Cheryl "*in accordance with the Policy . . . as beneficiary of said insurance policy.*" D.E. 15 at 7 ¶¶ 24-25 (emphasis added). Defendants do not argue that Plaintiffs breached a legal duty other than "its failure to choose between the adverse claimants (rather than bringing an interpleader action)[.]" *Hovis*, 553 F.3d at 265. Defendants' NJCFA claim fares not better as the "unconscionable commercial practice" that serves as the crux of the claim is again Plaintiff's failure to sort out the situation and

11

pay Cheryl. D.E. 15 at 8 ¶ 36. Accordingly, both of Plaintiff's claims are subsumed into the interpleader action.

The Court grants Plaintiff's motion to dismiss.

Finally, Plaintiff asks for the fees and costs it expended in bringing this matter. D.E. 10 ¶ 7. A court may, in its discretion, award the plaintiff in an interpleader matter "attorneys fees and costs if the plaintiff is (1) a disinterested stakeholder, (2) who had conceded liability, (3) has deposited the disputed funds with the court, and (4) has sought a discharge from liability." *Metro. Life Ins. Co. v. Kubichek*, 83 F. App'x 425, 431 (3d Cir. 2003). Plaintiff has not, however, specified the amount of money it seeks. Before considering any application, the Court will direct Plaintiff to submit in writing on the docket the amount Plaintiff believes constitutes its costs and reasonable fees.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's motion is granted. An appropriate Order accompanies this Opinion.

Dated: April 28, 2022.

_____
John Michael Vazquez, U.S.D.J.