**Not for Publication**

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILTON REASSURANCE LIFE COMPANY OF NEW YORK,<br><br>*Plaintiff*,<br><br>v.<br><br>CHERYL ENGELHARDT[1]; LYDIA ENGELHARDT; AND MARK ENGLEHARDT,<br><br>*Defendants*. | Civil Action No. 21-9968<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on Defendants Cheryl and Lydia Engelhardt's (collectively "Defendants") unopposed motion for default judgment against Defendant Mark Engelhardt ("Mark"),[2] pursuant to Federal Rule of Civil Procedure 55(b). D.E. 25. The Court reviewed all submissions[3] made in support of the motion and considered the motion without oral

---

[1] Plaintiff spells Defendants' last name as "Engelhardt," while Defendants Cheryl and Lydia spell it as "Englehardt." The Court uses the spelling in the Complaint unless quoting from Defendants' submissions.

[2] Because the parties share a surname, the Court refers to them by their first names for clarity.

[3] The attorney certification submitted in support of Defendants' motion will be referred to as "Atty Cert." (D.E. 25-1); Defendant Cheryl Engelhardt's certifications submitted in support of Defendants' motion will be referred to as "C. Engelhardt Cert." (D.E. 25-2) and "C. Engelhardt Supp. Cert." (D.E. 26). When citing to exhibits to the certifications, the Court first cites to the respective document followed by the relevant exhibit ("Ex. __") and cites to the page numbers in the ECF header.

argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b).  For the reasons that follow, Defendants' motion is **DENIED**.

## I. FACTS AND PROCEDURAL HISTORY

This matter arises out of an insurance dispute.  Plaintiff's predecessor-in-interest issued life insurance policy no. LN00462680 (the "Policy") on April 5, 1988, to Ralph Engelhardt (the "Decedent").  D.E. 1 ¶ 7.  The Policy provided a death benefit of $100,000. *Id.* ¶ 8.  The Decedent died on December 11, 2019. *Id.* ¶ 9.  At the time of the Decedent's death, the named beneficiary was Cheryl, the Decedent's ex-wife, and the contingent beneficiary was Mark, the Decedent's brother. *Id.*  Both Cheryl and Mark submitted a Claimant's Statement to Plaintiff claiming to be the "Named Beneficiary" of the Decedent's Policy. *Id.* ¶¶ 10, 12.  Cheryl also submitted a Property Settlement and Support Agreement ("PSA"), which Cheryl and the Decedent had entered into when they divorced in 2016, explaining that under the terms of the PSA, the Policy was to be maintained for the benefit of Lydia, the Decedent's daughter, until she was emancipated.[4] *Id.* ¶¶ 11, 13; *see also* D.E. 1-5, Atty. Cert, Ex. E at 40.

---

[4] Section 13.1 of the PSA provides as follows:

> Each party shall maintain a life insurance policy with a minimum face amount of $100,000.00 for the benefit of their daughter, Lydia, and shall designate the other as Trustee of said policy, until Lydia is emancipated. The parties shall each furnish a copy of his/her life insurance policy to the other by June 30, 2016 and proof that such policy remains in effect by June 30th of each year thereafter. Neither party shall cancel or make any modifications to his/her policy without the written consent of the other party or a Court Order until Lydia is emancipated.

Atty Cert., Ex. E at 40.  The PSA also indicates that various events will result in Lydia being deemed emancipated. *Id.* at 31-32.

On April 21, 2021, Plaintiff filed an interpleader action, D.E. 1, and on September 27, 2021, Plaintiff moved for an Order directing the deposit of the disputed funds into the Federal Registry. D.E. 10. On October 12, 2021, Defendants opposed the motion, D.E. 16, and filed their Answer, Crossclaims, and Counterclaims, asserting two counterclaims against Plaintiff and one crossclaim against Mark. D.E. 15. On April 28, 2022, the Court granted Plaintiff's motion and dismissed Plaintiff from this matter. D.E. 19, D.E. 20. The Court also ordered Mark to file an answer to the Complaint, including any crossclaims regarding the underlying substantive disputes, no later than May 12, 2022. *Id.* Mark has not answered or otherwise moved as to the Complaint or Crossclaim. Atty Cert. ¶ 4. On May 1, 2022, Cheryl and Lydia moved for entry of default and filed the instant motion. D.E. 24, 25.

## II.   STANDARD OF REVIEW

Rule 55 allows for the entry of default against a party who has "failed to plead or otherwise defend" claims asserted against it. Fed. R. Civ. P. 55. Rule 55(a) mandates that the clerk enter default judgment when that failure is shown "by affidavit or otherwise." Fed. R. Civ. P. 55(a). Following entry by the clerk, Rule 55(b) allows the Court to enter default judgment "upon application of a party." *Jeweled Cross Co. v. Buy-Rite Designs, Inc.*, No. 08-1821, 2010 WL 143689, at *2 (D.N.J. Jan. 12, 2010). The "or otherwise defend" clause allows the Court to impose default judgment when "a party has failed to comply with a court's orders, file a pretrial memorandum or respond to discovery requests." *Id.*

Default judgment may be entered only if the party seeking default judgment's factual allegations establish the right to the requested relief. *Ramada Worldwide Inc. v. Courtney Hotels USA, LLC*, No. 11-896, 2012 WL 924385, at *3 (D.N.J. Mar. 19, 2012). The Court must determine (1) whether the party seeking default judgment produced sufficient proof of valid service and

3

evidence of jurisdiction, and (2) whether the unchallenged facts present a sufficient cause of action. *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Arata Expositions, Inc.*, No. 22-04056, 2023 WL 3821133, at *1 (D.N.J. June 5, 2023) (internal citations omitted). The plaintiff, however, is not entitled to default judgment as a matter of course or as a matter of right. *Id.* Whether default judgment is proper is "largely a matter of judicial discretion." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). The Court's discretion "is not without limits." *Id.* The Third Circuit has emphasized that cases should be "disposed of on the merits whenever practicable." *Id.* (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984)). In determining whether default judgment is proper, the Court weighs three factors: (1) prejudice to the party seeking default judgment if default is denied; (2) whether the party subject to default appears to have a meritorious defense; and (3) the culpability of the party subject to default. *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund*, 2023 WL 3821133, at *1.

### III. ANALYSIS

#### A. Sufficiency of Proof of Service.

Prior to entering default judgment, the court is first required to determine whether process was properly served on the defendant. *Teamsters Pension Fund of Phila. & Vicinity v. Am. Helper, Inc.*, No. 11-624, 2011 WL 4729023, at *2 (D.N.J. Oct. 5, 2011). "[T]he party asserting the validity of service bears the burden of proof on that issue." *Grand Entm't Grp. V. Star Media Sales*, 988 F.2d 476, 488 (3d Cir. 1993) (citation omitted). "Because courts lack personal jurisdiction where service of process is improper, determining proper service is a threshold issue." *Khater v. Puzino Dairy, Inc.*, No. 14-4618, 2015 WL 4773125, at *3 (D.N.J. Aug. 12, 2015) (citing *Lampe v. Xouth, Inc.*, 952 F.2d 697, 700-01 (3d Cir. 1991)).

4

Cheryl and Lydia provide a Certificate of Service, which states that a copy of the Answer, Counterclaim, and Crossclaim were sent to Mark via regular mail and e-mail on October 12, 2021. Atty Cert., Ex. A; *see also* D.E. 15-1.  Thus, it appears that Defendants attempted to effectuate service under Federal Rule of Civil Procedure 5(b)(2)(C), which allows papers to be served by "mailing [them] to the person's last known address—in which event service is complete upon mailing." Fed. R. Civ P. 5(b)(2)(C).  However, where a party has not yet appeared in a matter, crossclaims against that party must be served, with a summons, in accordance with the requirements of Rule 4 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 5(a)(2) ("[A] pleading that asserts a new claim for relief against [a party who has failed to appear] must be served on that party under Rule 4."); *see also Bayonne Drydock & Repair Corp. v. Wartsila N. Am., Inc.*, No. 12-819, 2013 WL 3286149, at *5 (D.N.J. June 28, 2013) (citing Fed. R. Civ. P. 5(a)(2)) ("Prior to a party appearing in a lawsuit, a cross[]claim should be served along with a summons pursuant to Rule 4 of the Federal Rules of Civil Procedure.").[5]

On the date that Defendants attempted service—October 12, 2021—Mark had not yet appeared in this matter.[6]  Accordingly, for service of the crossclaim to be proper, Defendants were required to serve the crossclaim, with a copy of the summons, upon Defendants in accordance with the requirements of Federal Rule of Civil Procedure 4.  Federal Rule of Civil Procedure 4(e) applies to serving an individual within a judicial district of the United States.  Under Rule 4(e)(2),

---

[5] *See also Fluor Engineers & Constructors, Inc. v. S. Pac. Transp. Co.*, 753 F.2d 444, 449 n.7 (5th Cir. 1985) (recognizing that before a party appears in a lawsuit, a crossclaim should be served with a summons pursuant to Rule 4 of the Federal Rules of Civil Procedure, whereas service pursuant to Rule 5 of the Federal Rules of Civil Procedure is appropriate once a party has appeared).

[6] While Defendants' certificate of service, Atty Cert., Ex. A, states that service was attempted on October 12, 2021, Defendants' attorney certification, Atty Cert. ¶ 2, states that service was attempted on October 21, 2021.  The analysis remains the same regardless, as Mark had not yet appeared on either date.  To date, Mark has not appeared in this matter.

an individual may be served by (1) delivering a copy of the summons and crossclaim to the individual personally; (2) leaving a copy of each at the individual's dwelling with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2). Rule 4(e)(1) also provides that an individual may be served by following state law for service in "the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Service by email and regular mail was not sufficient under Federal Rule of Civil Procedure 4(e)(2), thus, the Court considers whether it was nevertheless sufficient under New Jersey law or South Carolina law, in accordance with Federal Rule of Civil Procedure 4(e)(1).

New Jersey Rule of Court 4:4-4(a)(1) applies to serving an individual in New Jersey. Under 4:4-4(a)(1), an individual may be served by (1) delivering a copy of the summons and crossclaim to the individual personally; (2) leaving a copy of each at the individual's dwelling with a competent member of the household who is over the age of 14; or (3) delivering a copy of each to a person authorized by appointment or law to receive service of process. R. 4:4-4(a)(1).[7] In South Carolina, an individual may be served by (1) delivering a copy of the summons and crossclaim to the individual personally; (2) leaving a copy of each at the individual's dwelling with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. S.C.R.Civ.P. 4(d)(1). Additionally, under Rule 4(d)(8) of the South Carolina Rules of Civil Procedure, service may be effected via certified mail, return receipt requested, with "service [being] effective upon the date of delivery as shown on the return receipt." S.C.R.Civ.P. 4(d)(8). Service pursuant to 4(d)(8),

---

[7] If personal service by this means cannot be effected, then Rule 4:4-4(b)(1)(C) provides an alternate means of service. N.J. Ct. R. 4:4-4(b)(1)(C).

6

however, "shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing the acceptance by the defendant." S.C.R.Civ.P. 4(d)(8).

Here, Defendants' Certificate of Service indicates that a copy of the Answer, Counterclaim, and Crossclaim was sent to Mark via regular mail and email. Atty Cert., Ex. A; *see also* D.E. 15-1. Because Defendants fail to demonstrate that service of the crossclaim and a copy of the summons was made by delivery to a statutorily authorized individual as is required by N.J. Ct. R. 4:4-4(a)(1) and S.C.R.Civ.P. 4(d)(1), or that service of such papers was made by certified mail, with a return receipt reflecting the date of delivery, as is required under S.C.R.Civ.P. 4(d)(8), service was insufficient under both New Jersey law and South Carolina law. Because Mark was not properly served, the Court lacks personal jurisdiction over him.[8] Therefore, Plaintiffs' motion for default judgment is denied.[9]

---

[8] The Court acknowledges that Mark appears to have actual notice of this lawsuit. Atty Cert. ¶ 2. It also appears that Defendants attempted to serve the default judgment papers via email and regular mail on a "present or former attorney for [Mark]." D.E. 25-4, D.E. 26-1. The Third Circuit has recognized that "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Stranahan Gear Co. v. NL Industries, Inc.*, 800 F.2d 53, 56 (3d Cir. 1986) (quoting *Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984)). However, the Third Circuit has also emphasized that "the rules are there to be followed, and plain requirements for the means of effecting service may not be ignored." *Id.* Here, the relevant provisions of Federal, New Jersey, and South Carolina law require that, where a party has not yet appeared, service of crossclaims and a copy of the summons must be made personally, either on the individual themselves, a suitable individual who lives in the defendant's home, or an authorized agent—or under South Carolina law, by certified mail, so long as there is a return receipt showing acceptance by the defendant. Service via regular mail or email is insufficient even where there is actual notice. *See Jackson Hewitt Inc. v. Active Income Taxes, Inc.*, No. 22-02355, 2022 WL 17340726, at *4 (D.N.J. Nov. 30, 2022) (finding that service was improper, notwithstanding the fact that the defendants had notice); *see also Armco, Inc.*, 733 F.2d at 1089 (finding that actual notice is not valid service of process, as "the rules are there to be followed, and plain requirements for the means of effective service of process may not be ignored.").

[9] Additionally, "to receive a judgment of default . . ., a party must first obtain entry of default from the Clerk of the Court," as "entry of a default judgment is a two-part process." *Richardson v. Cascade Skating Rink*, No. 19-08935, 2021 WL 1259669, at *3 (D.N.J. Apr. 6, 2021) (internal

7

### B. Sufficiency of Cause of Action

The Court would otherwise find that Defendants' allegations, taken as true, establish a sufficient cause of action. Once a defendant has defaulted, the Court must take as true the factual allegations of the pleading. *Teamsters Health & Welfare Fund of Phila.*, No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012). Here, Defendants bring a crossclaim against Mark for an order declaring that Mark has no right to the proceeds due under the Policy. D.E. 15. In relevant part, Defendants allege that Cheryl was "entitled to receive all of the Policy Proceeds[,]" and that Mark "was a contingent beneficiary under the Policy, and entitled to receive none of the Policy Proceeds as the Primary Beneficiary of the Policy is Defendant, Cheryl Engelhardt." D.E. 15 at 11 ¶¶ 13-14. Defendants continue that when Cheryl and the Decedent got divorced, they entered into the PSA, which provides that the Decedent's life insurance policy would be maintained for the benefit of Lydia until she is emancipated. *Id.* at 11 ¶¶ 15-17; *id.* at 12 ¶¶ 23-25. Defendants further state that, at the time of the Decedent's death, Lydia was not emancipated. *Id.* at 11 ¶17. Accordingly, Defendants describe Mark's claim submission as "wrongful," and continue that he "has no interest in the Policy or the Policy Proceeds yet has failed to relinquish his wrongful claim to the same." *Id.* at 12 ¶¶ 26-28.

The PSA is governed by New Jersey law. Atty Cert., Ex. E at 42 ¶ E. Under New Jersey law, courts apply basic contract principles and give the "words of an agreement . . . their ordinary meaning." *Guardian Life Ins. Co. of Am. v. Gonnella*, 806 F. App'x 79, 81 (3d Cir. 2020) (internal quotation marks and citations omitted). In reviewing the terms of a contract, when "the parties'

---

quotation marks and citations omitted). Here, Defendants filed a Request to Enter Default on April 28, 2023, but default was not entered by the Clerk's Office thereafter. In accordance with the accompanying Order, Defendants are granted leave to re-serve the crossclaim on Mark, and if Mark fails to timely respond, Defendants may move for the Clerk of the Court to enter default.

intent is plain and the language is clear and unambiguous, [the court] must enforce the agreement as written, unless doing so would lead to an absurd result. *Id.* Here, the PSA provides that the Decedent and Cheryl "shall maintain a life insurance policy with a minimum face amount of $100,000.00 for the benefit of their daughter, Lydia, and shall designate the other as Trustee of said policy, until Lydia is emancipated." Atty Cert., Ex. E at 40. The PSA continues that "[n]either party shall cancel or make any modifications to his/her policy without the written consent of the other party or a Court Order until Lydia is emancipated." *Id.* The fact that the Decedent and Cheryl were divorced does not change this analysis. While New Jersey law provides that "a divorce or annulment[] revokes any revocable[] dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument[,]" it expressly exempts "contract[s] relating to the division of the martial estate" from revocation. N.J.S.A. 3B:3-14(a). Thus, Defendants' allegations, taken as true, would establish a sufficient cause of action.

### C. Default Judgment Factors

Had service been sufficient, the Court would find that the three default judgment factors weigh in favor of granting default judgment. First, Defendants are prejudiced because they cannot proceed in this matter without action from Mark. Atty Cert. at 2 ¶¶ 3, 5; *see Strike 3 Holdings, LLC v. Doe*, No. 21-1568, 2022 WL 16744122, at *3 (D.N.J. Nov. 7, 2022) (citation omitted) (finding that denial of a motion for default judgment would prejudice plaintiff because the plaintiff would be "left with no other means to vindicate its claims." (internal quotation marks and citations omitted)). Second, Mark does not have a meritorious defense. A meritorious defense is one which "if established at trial, would completely bar a plaintiff's recovery." *Teamsters Health & Welfare Fund of Phila.*, 2012 WL 3018062, at *4. Mark has failed to respond, thus no meritorious defense presently exists. *See United States v. Vo*, No. 15-6327, 2016 WL 475313, at *3 (D.N.J. Feb. 8,

9

2016) (finding that because the defendant failed to respond, "no meritorious defense presently exists with respect to deciding this motion for default judgment."). Finally, Mark's failure to answer, and failure to comply with this Court's order, demonstrate his culpability. A defendant is "presumed culpable where [they have] failed to answer, move, or otherwise respond." *Slover v. Live Universe, Inc.*, Civ. No. 08–02645, 2009 WL 606133 *2 (D.N.J. Mar. 9, 2009) (internal citation omitted); *see also Strike 3*, 2022 WL 16744122, at *3 (citation omitted) (presuming culpability based on failure to respond). Therefore, the Court finds that all three factors demonstrate that default judgment is warranted.

## IV. CONCLUSION

For the foregoing reasons, and for good cause shown,

**IT IS** on this 31 day of July 2023,

**ORDERED** that Defendants Cheryl and Lydia Engelhardt's (collectively, "Defendants") motion for default judgment against Defendant Mark Engelhardt ("Mark"), D.E. 25, is **DENIED**; and it is further

**ORDERED** that Defendants are granted leave to re-serve the crossclaims on Mark within ninety (90) days pursuant to the Federal Rules of Civil Procedure, and if Mark fails to timely respond to the crossclaims, Defendants may move for the Clerk of the Court to enter default; and it is further

**ORDERED** that the Clerk's Office is directed to issue the summons for the crossclaims as to Defendant Mark Engelhardt.

_____
John Michael Vazquez, U.S.D.J.